hmUNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| JAMES DALY, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 14-cv-3379 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| CITY OF STICKNEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### AMENDED MEMORANDUM OPINION AND ORDER

Plaintiff James Daley filed a First Amended Complaint against the City of Stickney, Detective Cruz Ortiz, and other Defendants.[1] Plaintiff's Complaint alleges several constitutional violations resulting from the removal of Plaintiff's children from his custody. Defendants Stickney and Ortiz filed a Motion for Summary Judgment for Counts I, II, III, and V. For the reasons set forth more fully below, Defendants' Motion for Summary Judgment [49] is granted.

### LOCAL RULE 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific

---

[1] Defendants Village of Lyons and Officer DeLeshe were voluntarily dismissed on November 10, 2015. Plaintiff and Defendants School District 103, John Billingsley, and Dr. Michael Werner entered an agreed order of dismissal of the claims against them on October 1, 2015.

supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In the case of any disagreement, the nonmoving party must reference affidavits, parts of the record, and other materials that support his stance. Local Rule 56.1(b)(3)(B). To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment."

If a responding party does not comply with Rule 56.1, "additional facts may be ignored, and the properly supported facts asserted in the moving party's submissions are deemed admitted." *Gbur v. City of Harvey, Illinois*, 585 F. Supp. 2d 600, 606-07 (N.D. Ill. 2011). Substantial compliance is not enough; parties must strictly comply with the rule. *See Ammons*, 368 F.3d at 817.

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Plaintiff is the father of two minor children: Elizabeth and Nicholas. (DSOF, ¶ 1). Defendant Village of Stickney is a municipal corporation which employs Detective Cruz Ortiz. (*Id.* ¶ 2.) Plaintiff was arrested by Ortiz on May 16, 2012, and charged with child neglect, based on his care and treatment of Elizabeth. (*Id.* ¶ 1.) Plaintiff's children were enrolled in

2

George Washington Middle School and lived in Stickney. (*Id.* ¶ 10.) Elizabeth was diagnosed with bipolar disorder with occasional major depression. (*Id.* ¶ 13.) Elizabeth had only attended sixteen days of school for the 2011-2012 school year prior to Plaintiff's arrest. (*Id.* ¶ 14.)

Detective DeLeshe is an employee of the Village of Lyons Police Department. (*Id.* ¶ 3.) At the time of Plaintiff's arrest, Detective DeLeshe was working as a school liaison officer for Elizabeth's school. (*Id.* ¶ 26.) At some point before the arrest, DeLeshe learned about concerns that Elizabeth was not being provided medications and medical care. (*Id.* ¶ 29.) Prior to Plaintiff's arrest, DeLeshe was also told that the Department of Children and Family Services ("DCFS") contacted the school, advised that police involvement was needed, and took a report for medical neglect. (*Id.* ¶ 31.)

DeLeshe contacted the Stickney Police Department and requested that someone from Stickney investigate, as Plaintiff was a resident of Stickney. (*Id.* ¶ 33.) Ortiz first learned information about Plaintiff and his daughter at the beginning of his work shift on May 16, 2012. (*Id.* ¶ 34.) DeLeshe and Ortiz met at Plaintiff's residence that day. (*Id.* ¶ 36.) On May 16, 2012, prior to any contact with Plaintiff at his residence, DeLeshe relayed the information he had learned from school personnel to Ortiz, including: concerns about Elizabeth's medical treatment, that Elizabeth had only attended sixteen days of school since early 2011, and a report from the school that Plaintiff stated on the phone that he was giving a bath to Elizabeth, who was in seventh grade at the time. (*Id.* ¶¶ 37, 28, 39.) [2] After learning this information, Ortiz

---

[2] Plaintiff objects to Defendants' Statement of Facts ¶ 40, which states that DeLeshe gave Ortiz a written, chronological narrative of school staff accounts of their efforts to address various concerns regarding Elizabeth. Plaintiff objects generally to the lack of foundation and authentication of the chronological narrative. Plaintiff also specifically objects to the claim that Detective DeLeshe gave the chronological narrative to Detective Ortiz. However, the chronological narrative is not necessary to consider because of the other undisputed facts discussed herein.

approached Plaintiff and the two children outside the Daly house. (*Id.*, ¶ 42.) Ortiz told Plaintiff that he needed to speak with Plaintiff regarding his daughter at the Stickney Police Department. (*Id.*) Plaintiff agreed to go with Ortiz to the police station with his children. (*Id.*, ¶ 44.)

Ortiz and Daly went to a report room, where Ortiz read Plaintiff his *Miranda* rights, which were waived. (*Id.*, ¶¶ 45-56.) Ortiz asked Plaintiff about Elizabeth's absences, bringing Elizabeth to school in a blanket, a conversation between Plaintiff and the school regarding a bath, and two missed doctor appointments. (*Id.*, ¶ 48.) Plaintiff told Ortiz that he had attempted to bring Elizabeth to at least one of the two missed doctor appointments. (PSOF, ¶ 12.) Plaintiff told Ortiz that Elizabeth was making her doctor's appointments and taking medication. (*Id.* ¶ 20.) Ortiz knew that Plaintiff was a single father. (*Id.* ¶ 17.)

During the interview, Daly gave Ortiz permission to speak with Elizabeth's psychiatrist, Dr. Stacyann York. (DSOF, ¶ 49.) York informed Ortiz that Elizabeth did not begin an outpatient program earlier that month, that Elizabeth had not attended her last two appointments, and that Elizabeth is bipolar and on medication. (*Id.* ¶ 50.) York also expressed concern that Plaintiff had been untruthful about Elizabeth's appointments and telling people that Elizabeth was being prescribed Prozac when that was not the case. (*Id.* ¶ 51.)

Ortiz decided to arrest Plaintiff and charge him with misdemeanor child neglect. (*Id.* ¶ 53.) Elizabeth was transported to MacNeal Hospital to be medically evaluated. (*Id.* ¶ 54.) The children's maternal grandparents took custody of Elizabeth and her brother. (*Id.*, ¶ 57.)

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Courts deciding summary judgment motions must view facts "in the light most

4

favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Factual disputes do "not preclude summary judgment when the dispute does not involve a material fact." *Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015).

## ANALYSIS

### Count I

In Count I, Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that there was a conspiracy to falsely arrest Plaintiff.

Defendants argue there are no facts supporting a conspiracy to falsely arrest Plaintiff. In order to prove a civil conspiracy, "a plaintiff must show (1) an express or implied agreement among defendants to deprive the plaintiff of his constitutional rights, and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Thurman v. Vill. of Hazel Crest*, 570 F. Supp. 2d 1019, 1029 (N.D. Ill. 2008). Plaintiff has not shown facts proving an express or implied agreement to deprive him of his constitutional rights. It is undisputed that Ortiz never met or spoke with school district employees prior to arresting

Plaintiff. There are also no facts showing that Ortiz and DeLeshe had any agreement to arrest Plaintiff in violation of his constitutional rights.

Defendants also claim that probable cause existed to arrest Plaintiff. "Probable cause is an absolute defense to a claim of wrongful arrest under section 1983." *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014) (citing *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008)). Probable cause exists if, "at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to permit a prudent person to believe that the suspect had committed, is committing, or is about to commit an offense." *Id.* Probable cause is evaluated based on the facts "as they would have appeared to a reasaonble person in the position of the arresting officer." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). A determination of whether probable cause exists "must be made by a jury 'if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.'" *Chelios*, 520 F.3d at 686 (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir.1993) (explaining that, "[i]f the underlying facts supporting the probable cause determination are not in dispute, the court can decide whether probable cause exists")). Plaintiff was arrested for misdemeanor child neglect:

> Any parent, legal guardian or person having the custody of a child under the age of 18 years, who knowingly or willfully causes, aids or encourages such person to be or to become a dependent and neglected child as defined in section 1, who knowingly or willfully does acts which directly tend to render any such child so dependent and neglected, or who knowingly or willfully fails to do that which will directly tend to prevent such state of dependency and neglect is guilty of the Class A misdemeanor of contributing to the dependency and neglect of children . . .

720 ILCS 130/2 (West 2012).

At the time of Plaintiff's arrest, Ortiz knew that school personnel had concerns about Elizabeth not receiving medical treatment, that Elizabeth had only attended sixteen days of

6

school since early 2011, that there was a report from the school that Plaintiff stated on the phone that he was giving a bath to Elizabeth (who was in seventh grade at the time) and that DCFS had requested police involvement. Dr. York told Ortiz that Elizabeth had not begun an outpatient program earlier that month, that Elizabeth had not attended her last two appointments, and that Elizabeth is bipolar and on medication. Dr. York also expressed concern that Plaintiff had been untruthful about Elizabeth's appointments and telling people that Elizabeth was being prescribed, and taking, Prozac when that was not the case.[3]

Plaintiff argues that Ortiz did not have enough facts to give him a reasonable belief that Plaintiff possessed the requisite intent, *i.e.*, that he did not knowingly or willfully commit child neglect. However, as set out above, it is undisputed that Oritz knew Plaintiff was a single father and that Plaintiff was aware of Elizabeth's medical condition and medical treatments. In contrast, Plaintiff cites cases where the parents had no knowledge of their children's condition. *See BeVier v. Hucal*, 806 F.2d 123, 126 (7th Cir. 1986) ("[Officer] needed some evidence that the [parents] knew of their children's predicament but failed to prevent it."). Plaintiff also argues that had Ortiz investigated further, he would have learned facts that would have argued against probable cause. However, probable cause is not evaluated on the facts "as an omniscient

---

[3] Plaintiff's affidavit of November 9, 2015, prepared after the submission of Defendant's Statement of Facts, avers that Ortiz did not ask him questions about Elizabeth's medications or speak with him about psychiatric medications. (Dkt. 67-17, ¶¶ 11-15.) There is a dispute as to whether Plaintiff's affidavit is competent evidence. "[A] self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts" to rebut a summary judgment motion. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). However, the affidavit is somewhat discredited by Plaintiff's earlier deposition testimony of April 30, 2015, that he could not remember what Ortiz asked him in the interview:
    A  Detective DeLeshe didn't say much. He more or less listened. Detective Ortiz asked some questions pertaining to Elizabeth.
    Q  What did he ask you?
    A  I don't remember.
(Dkt. 67-1, p. 21:7-12.)

observer would perceive them." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). The facts demonstrate that Ortiz conducted a reasonable investigation by interviewing Plaintiff and Dr. York after receiving information from DeLeshe. "[A]n officer who has established cause on every element of the crime need not continue investigating to check out leads or test the suspect's claim of innocence." *BeVier*, 806 F.2d at 128. Based on the foregoing facts, Ortiz had probable cause to arrest Plaintiff for misdemeanor child neglect.

Defendants also argue that Ortiz is entitled to qualified immunity. Qualified immunity "shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305-06 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Officers who make a "reasonable error in determining whether there is probable cause to arrest an individual" are entitled to qualified immunity. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (quoting *Chelios*, 520 F.3d at 691.) "To determine whether a defendant is entitled to qualified immunity, courts must address two issues: (1) whether the defendant violated the plaintiff's constitutional rights and (2) whether the right at issue was clearly established at the time of the violation." *Stainback v. Dixon*, 569 F.3d 767, 770 (7th Cir. 2009) (citing *Phelan v. Vill. of Lyons*, 531 F.3d 484, 487 (7th Cir. 2008)). As discussed above, Ortiz did not violate Plaintiff's constitutional rights as there was probable cause to arrest Plaintiff; and Ortiz would also be immune from liability on that basis.

Defendants' Motion for Summary Judgment is granted as to Count I.

### *Count II*

In Count II, Plaintiff alleges that Ortiz committed an unreasonable seizure. Under the Fourth Amendment, a person has been seized "only if, in view of all of the circumstances

8

surrounding the incident, a reasonable person would have believed that he was not free to leave." *Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009) (internal citations and quotations omitted). A plaintiff may bring a claim for unreasonable seizure when an arrest occurs without probable cause. *Id.* (citing *A.M. v. Butler*, 360 F.3d 787, 798 (7th Cir. 2004)). A plaintiff must establish that the government's conduct constituted a seizure and that the seizure was unreasonable. *Id.* (citing *Bielanski v. County of Kane*, 550 F.3d 632, 637 (7th Cir. 2008)).

Plaintiff argues that he was subject to unreasonable seizure when he was read his *Miranda* rights. However, Plaintiff agreed to go to the police station with Ortiz. And "the mere giving of such warnings even when not required does not transform noncustodial questioning into nonconsensual custodial interrogation." *Booker v. Ward*, 94 F.3d 1052, 1058 (7th Cir. 1996). When DeLeshe and Ortiz met at Plaintiff's residence, DeLeshe relayed the information he had learned from school personnel, including concerns about Elizabeth's medical treatment, excessive absences from school since early 2011, the report that Plaintiff stated he was giving a bath to Elizabeth, and that DCFS had requested police involvement, all as more fully discussed above. This information gave Ortiz, at the least, reasonable suspicion to further investigate regarding Elizabeth. It is undisputed that Plaintiff agreed to accompany Ortiz to the police station. (DSOF, ¶ 44.) The reading of *Miranda* rights did not transform the questioning into a custodial interrogation. As mentioned above, Ortiz decided to arrest Plaintiff after the interview had ended.

Defendants' Motion for Summary Judgment is granted as to Count II.

*Count III*

In Count III, Plaintiff alleges a deprivation of his interests in familial association, privacy, and autonomy without due process. "The fundamental right to familial relations is an aspect of

9

substantive due process." *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011) (citing *Siliven v. Indiana Dept. of Child Servs.*, 635 F.3d 921, 928 (7th Cir. 2011)). However, this right is not absolute and "must be balanced against the state's interest in protecting children from abuse." *Siliven*, 635 F.3d at 928. "In the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances, meaning that state officers have reason to believe that life or limb is in immediate jeopardy." *Hernandez*, 657 F.3d at 474 (citing *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1010 (7th Cir. 2000)).

Defendants argue that Ortiz was instructed to remove the children from Plaintiff's custody by DCFS. Plaintiff responds that DCFS investigation notes do not reflect that Ortiz spoke with someone at DCFS. The DCFS investigation notes are hearsay that cannot be relied on to rebut Defendants' summary judgment motion. *See Eisenstadt*, 113 F.3d at 742 (facts relying upon inadmissible hearsay are disregarded). Plaintiff has not argued an exception or provided an affidavit verifying the records.[4] Plaintiff's children were not taken into custody until after Ortiz had probable cause to arrest Plaintiff, who was a single father. Ortiz's testimony and his police report state that DCFS instructed that Plaintiff was not to have contact with his children until a social worker investigated. Plaintiff argues that the police report shows that the children were placed in protective custody before Ortiz spoke with DCFS. However, this is not a

---

[4] Defendants object to the introduction of DCFS records as they are not authenticated and contain hearsay. Under Federal Rule of Evidence 803, absence of a public record is an exception to hearsay and allows for testimony, or a certification, "that a diligent search failed to disclose a public record or statement if: (A) the testimony or certification is admitted to prove that (i) the record or statement does not exist; or (ii) a matter did not occur or exist, if a public office regularly kept a record or statement for a matter of that kind." Fed. R. Evid. 803(10). Plaintiff has not shown that there was a diligent search or that DCFS regularly kept such a record or statement.

material dispute of fact, as Ortiz had probable cause to arrest Plaintiff, the children's only caretaker, requiring protective custody.

Defendants' Motion for Summary Judgment is granted as to Count III.

*Count V*

Count V is a claim for indemnification against Stickney. Under Illinois law, a "local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable." 745 Ill. Comp. Stat. 10/9-102. Since Ortiz had probable cause to arrest Plaintiff and remove Plaintiff's children from his custody, there is no cause for indemnification by Stickney. Defendants' Motion for Summary Judgment is granted as to Count V.

## **CONCLUSION**

Defendants' Motion for Summary Judgment [49] is granted. Judgment is entered in Defendants City of Stickney and Detective Cruz Ortiz's favor, and the civil case is closed.

Date:     January 27, 2016                                  _____
                                                            JOHN W. DARRAH
                                                            United States District Court Judge